May it please the Court that Harry Moran, 4th P.J. Sharer, acquitted of solace. Judge, you have five minutes, please. The Board of Immigration Appeals was wrong to conclude that Mr. Sales's conviction was an aggravated felony. The State of California has convicted Mr. Sales of second-degree murder that's neither no better than a natural and probable consequences theory. The jury did not find that Mr. Sales personally intended gun violence. It has no other criminal record. Neither charge of removability theory applies to Mr. Sales's conviction. First, his conviction is not a generic murder aggravated felony. Miss California applies its natural and probable consequences doctrine to sweep in a second-degree murder conduct that the other states would not consider as murder. It's overbought and categorically is not generic murder. Second, Mr. Sales's conviction is also not a crime of aggravated felony because the extent to which he's crime of violence remains constitutional. His conviction did not require proof of the internal use of physical force. That's correct, Your Honor. Your Honor, we can't really reach to this point. Do you agree with me? Well, Your Honor, this court would review the question de novo here. So this court would make a decision whether or not to decide the issue itself rather than remand you to apply it for consideration in the first instance. For example, if he told you to take care of it, the remand would be out of the consideration of the dismissed conviction where the BIA had already correctly determined that the charge of burglary conviction is not an aggravated felony. So we would request the court to decide the crime of violence issue itself here. Because an either-charge-or-removability applies to conviction, which is also not deportable, and this court should review this petition. Well, talk to me about Duenas-Alvarez. What, in your view, it stands for? So, in truth, Duenas-Alvarez stands for the proposition that any embedding liability is included within the generic ones and that a petitioner can show that a particular state's application of the natural and public consequences doctrine is overbroad beyond generic murder if that state applies the doctrine to criminalized conduct that the other states do not criminalize as the generic ones. Well, doesn't he have a public opinion, and you think the Supreme Court is wrong and that we should tell him that we don't know? No, I don't think the Supreme Court was wrong. I think that we are making a different story here than the petitioner in Duenas-Alvarez. So in Duenas-Alvarez, that petitioner asked the court to say that California's application of the natural and public consequences doctrine to theft conviction is always overbroad because I think there is no intent requirement. And the court of Duenas-Alvarez said, well, a lot of jurisdictions apply the natural and public consequences doctrine that they allow with their intent, so there is nothing special in that requirement. And we're making a different story here. We're making the show that California's application specifically to second-degree murder criminalizes nonviolent conduct such as possession of a concealed weapon or a loaded weapon. It criminalizes that nonviolent conduct, which as murder in none of the other states would criminalize possession of a loaded weapon or concealed weapon as murder. And should it or shouldn't it matter to us that the decision in Cruz-Santos, which you've highlighted I think would like for us to rely on, is being published? Well, I'd like to respond to that. I'd like to first say that I don't think you need to rely on Cruz-Santos. I think that Mr. Salas's conviction alone is sufficient to establish that California applies the doctrine overbroad. That's what Dwayne Salazar has said on page 193 that the petition was handled as part of his own case. So I don't think that you need to rely on Cruz-Santos. I think that Cruz-Santos is an interesting case. It's a difficult case. It establishes that from a categorical approach, it supports the decision that California would criminalize nonviolent conduct, which is the least that we have to criminalize, as murder. Now, it's a difficult case when you look at the facts of what the defendants in Cruz-Santos actually did. And I would submit that what California did differently from other states was include the illegal marijuana cultivation in the natural and public health post instruction. The defendants in those cases were convicted on the assault conviction. But even in other states, prosecutors would have instructed only on the assault conviction for natural and public health consequences and not tried to squeeze a murder conviction out of an illegal marijuana cultivation, as California quite did. So I guess that we don't rely on Cruz-Santos. I know you say we can just rely on Dwayne's office, but let's say we're looking for other authority. What's the best published authority for the scope of liability under California law for aiding and abetting murder? Well, so I think that we should rely on Dwayne Alvarez. I think that Dwayne Alvarez establishes that if the practitioner can point to his own case as an example of an overbought application, that is sufficient. This is what I don't understand. I greatly appreciate your being here. You've done a wonderful job as a pro bono. But this is what I don't understand. Dwayne Alvarez was a California case. That's correct. And the Supreme Court said, well, we don't look at the case and we don't see anything special. Now, you say, well, if you look at the facts here, it's different. So therefore, there is something special in place. It changes from case to case. Well, I'm not so much looking at the facts. I'm looking at the conduct that was criminalized, that possession of a loaded or concealed weapon was criminalized as secondary murder. And so this is an example. Mr. Salas's case makes the example that California applied the doctrine to criminalize possession of a loaded or concealed weapon as murder. And our proposition is that none of the other states would do that. At least 25 of the other states don't recognize an actual probable consequence of the doctrine. So to convict either in a battle or murder, they require proof of either a murderous intent or the recklessness of murderous intestine. Of the other states that do apply some form of the doctrine, about a third of the jurisprudence of these states has revealed no case in which a defendant was convicted of murder for aiding or abetting a nonviolent crime. The government has not identified any such case either. We're looking at the law of the states that do apply an actual probable consequence of the doctrine. At least seven of them in the District of Columbia, similar to the 25 states that don't. At least seven of those states also require that an aiding or abetting can only be convicted of murder using either the doctrine with the showing of murderous intent or the recklessness of murderous intestine. We've identified two of those states that don't appear to apply the doctrine outside the concepts of felony murder or conspiracy, which don't apply in this case. And there's another eight of those states, which also apply their doctrine similar to a conspiracy theory where the charge defense must be committed in pursuance of or in furtherance of the target offense. So what we're saying here is, would one of these states consider that a murder was committed in pursuance of possession of a murder or concealed weapon? And I think that is no more than a theoretical possibility, which is what Thomas Alvarez cautioned us against. So what I'm saying is that 25 states don't even apply the doctrine, and they require intent. In other states, there isn't such a case where it's been applied this way. And the law in at least 15 of those states shows that the doctrine or the order could not be applied in such a way. So that's where I'm saying that the application of California's natural and public consequences doctrine specific to second-degree murder and not to theft and violence committed to, particularly subject to Thomas Alvarez, specifically to second-degree murder, we've seen that it's overbroad, criminalized, and unlawful. Where do we look in the statement of the law of California that would tell us that? You're going to say it's applied, so that means you're talking about the application, so you're actually in a test case to look at the particular facts as we may see them. And I don't see quite how we can do that when the Supreme Court has said, well, there's nothing really unusual about the law. Well, the court attorney's office didn't shut the door on this type of consideration. In fact, they opened to it. I understand that. I'm not sure I understand your question. I think the court asked us to look at the case. This statement in the California Supreme Court law even says beyond what was the official, just as close descent from the figure to take the case. No. I don't think there's a affirmative statement by the California Supreme Court saying this is what we do, but when the Supreme Court went into this office and looked at how it's applied, and not as applied by how the prosecutors charge it, how they trial court actors. Yeah, I think that's to what is supposed to be a building agent, but I think Justice Alito described in his dissent a colloquy between the trial judge and the prosecutor in Cruz's context about how the trial judge wasn't sure if this was a proper instruction or not. That's the state applying it. We're going to reserve a couple of minutes. We'll start with a brief question. May it please the court. Good morning. My name is Jesse Yusef. I represent the Attorney General. The issue in this case is whether the board properly determined that Seattle's California conviction qualified as an aggravated felony. We believe that this is not the square of the IUA disoberence in this court's subsequent decisions upholding that Supreme Court case, multiple decisions ranging from possession of marijuana to robbery to marijuana cultivation to attempted murder. As the court is doing its offer, it's held the natural and probable consequences doctrine that California applies. It's not in itself overbroad, and the only way to overcome that would be to establish a realistic probability that California would apply that doctrine in a way that was overbroad. Let's start. Well, that's the wrong question to ask here. Well, the intent here that they needed to determine, the training and determine, was whether he had been directly intimated with possession of a concealed weapon, possession of a loaded weapon, possession of a loaded weapon in a vehicle, branching weapon assault, or assault with deadly weapon. So that is, with respect to intent, all they had to prove was intent to commit those crimes for the direct aiding and abetting liability. Okay, but he was convicted through the accomplice liability? Yes, he was convicted because... So there was no intent? Are you saying there was no intent requirement there? Well, there is an intent requirement for those offenses. But was there no intent requirement that an intentional murder was enhanced because of the accomplice liability? Well, under the natural and probable consequences doctrine, with respect to the principles in this murder, that intent is necessary to be proved. They only have to prove that he intended those underlying crimes. But under the natural and probable consequences, with respect to the murder, that intent would correlate enough. Only that the murder, the natural and probable consequence of those other crimes... So he wouldn't need to intend that this resulted in murder. That's the basis of the doctrine. Only that it was a natural and probable consequence of the weapons and assault charges. Do you agree that the California rule is the most expensive in the United States? I don't think that that has been necessarily established here that it's equally expensive. I cannot say off the top of my head if there is a reason that there aren't. Any that aren't? Again, I cannot say off the top of my head if you're voting for the analysis of the crime. I would, but again, it's a determination of whether there's a realistic probability, not necessarily a theoretical probability, but at least the Supreme Court has already stated that it is not overbroad based on looking at how it is applied elsewhere. And I would note, with respect to the statements of 25 states that don't apply this doctrine, I would refer the Court to Appendix C of Gonzales v. Guadalupe. That's not as broad a view as California. Again, I cannot say. I'm not sure you're all agreeing with me. I would, just to note, Appendix C, many of the states that petitioner alleges do not apply this doctrine are ones that Duenas-Offra has determined either do apply the doctrine or it is unclear whether they apply the doctrine. So Duenas-Offra did, and he cites many of the same statutes and case law. So I think saying 25 states don't apply this doctrine categorically there is over-overreaching. Is it fair that, I guess, I'm going to go to the Court of Appeals decision. And its decision on direct appeals, Court of Appeals, noted that the jury's verdict can't be understood as determining that the decision to actually shoot the victim was made, if ever, after sales friend left the car without the knowledge of sales or the other accomplices duplicitly knowing that sales had neither knowledge nor intent to kill. Does that have no bearing on our review at this point in light of what's being argued? I don't believe it does because I think that is part of this doctrine and it is something that, again, it's factual issue up to the jury to decide. Well, what intent does he have to have? Because there has to be some intent. Again, I think the only intent he has to have here is for the underlying offenses, the possession of the weapon and the assault charges. That would be the only thing that would have to be proven. That would be the only thing that the jury would have to determine. And as I stated, based on the evidence provided... Well, the intent, the intent would have to have been to determine the internal problem of the consequences. Right. Um, again, based on the evidence provided here, Sales has not established a realistic probability that the, um, the doctrine would be applied in an overbroad fashion rather than a theoretical possibility. He points to instances in places where this doctrine applies to show that in a circumstance like this, he applied it in an overbroad fashion, but simply points to absence of evidence rather than evidence of absence. Um, and so, governments believes that Duenas-Alvarez, this court's decisions, were wholly Duenas-Alvarez, the control here, and the coercion behind the petition. So how do you read in Duenas-Alvarez, um, where the court says, well, we can't, um, say that California has lost something special in, um, people being, when, um, the third district upheld the jury conviction of individuals who had aided in several robberies, in justice and prostitution,  when used by one of the individuals. And then it said the court, in upholding the verdict, wrote that knowledge of another's criminal purpose, citing a California case, knowledge of another's criminal purpose is not sufficient for creating a defendant. The defendant must also share that purpose or intend to commit, encourage, or facilitate the commission of the crime. And you, uh, you read that as saying that he doesn't have to have the, share the intent to murder. Correct. Only the intent of the underlying offense. And then the murder would have to be, again, that natural or probable consequence of those interferences. But we have to determine if this is broader than the federal definition. Yes, Your Honor. The generic definition. Yes. And so don't we have to look at whether or not California imposes criminal liability for aiding and abetting acts that are the natural probable consequence of a wide variety of crimes? I mean, it seems like Ms. Convicts remain a bit for aiding a crime other than murder and other than a violent crime. Don't we have to factor that into our consideration? Well, that is what the natural and probable consequences doctrine is. It is, you don't have to prove the intent to murder. Only the intent to commit. They had to prove aiding and abetting here. They had to prove that shared intent to commit these crimes for which he was charged with aiding and abetting. And then the murder conviction under the natural and probable consequences doctrine was simply needed to be a natural and probable consequence of that. And that is a factual question left to the jury and under the specific circumstances of the case. That's how it was applied in the case decided by the Supreme Court between Ms. Alvarez and that's how it was applied here. And there's no indication that the application here was more broad than in any case between Ms. Alvarez. He retweeted Ms. Alvarez and said he doesn't have to have the intent to further the sexual assault that was committed. He only has to have the intent to commit the underlying robbery. Yes. That is correct, Your Honor. And just briefly with respect to the crime of violence issue. As we briefed, we believe the court should wait for the Supreme Court's decision in Havana de Maya which should be coming down very soon. The case has been briefed. It was argued in January and I think we're expecting a decision by the end of June. So again, once if, but the court need not reach that decision because we believe that the position should be denied on the integrated felony ground. But if the court determines otherwise, we should wait for a decision in de Maya and then see. The issue in de Maya is what? The issue in de Maya is whether a 16D crime of violence is the constitutionally vague. So again, we should have a decision within another month and then if the court needs to address it, then we can address it at that point. And unless there are any additional questions. Thank you. Thank you. Thank you, Your Honors. I'll first brief into a crime of violence issue that my colleague raised. This court need not wait for de Maya because our argument about the crime of violence does not depend on de Maya itself. This court has found that both section 16A and 16B require a degree of, they both require beyond for both criminal steps to qualify as a crime of violence. So while we would, we look forward to the Supreme Court to affirm de Maya, our argument does not rest on that argument. No, that's a response to the person who used this argument that the intent that we look at, we're looking at the wrong intent, and we need to look at the intent for the, like in this case, the firearm. So I agree that there's two intents here. There's the intent to commit the abetted crime, the abetted crime, and there's the intent to commit murder. And this is where California is different in that in order to convict someone of second-degree murder in California, the defendant need not have any intent regarding that murder. That's where it's overbroad. And as we pointed out, you know, half of the states... That's true, they have to find the natural involvement, but they don't have to find any murderous intent. They don't have to make any inference of murderous intent. Some of these states allow for an inference, which at least allows the defendant to show that he did not have that intent. But in California, the defendant's active intent regarding a murder is irrelevant. California applies its natural and public consequences in an objective manner, not in a subjective manner. The defendant did not argue that it's... In brief, our characterization of the 25 states that do not apply natural and public consequences was incorrect. It merely relies on the duality between us, however, as it's listed in 2007, which, as you can see, it's both a list of natural and public consequences. The states that don't apply natural and public consequences have states that have useful intent. Our list of 25 states that do not apply a natural and public consequences doctrine here, the government has not reviewed it that specifically. Would you want to point to the language in the Supreme Court decision in Dunis that supports your position most strongly in that discussion, or did you want to point to that? I'm not sure I understand the question. In the Supreme Court decision, there's certain language that might be regarded as supporting your position. Did you want to add to that in Dunis? So, I'm going to... Well, I'm going to go on. It's... Wait, wait. It says that I have a petition on my shelf or something personal about the state's application. And that also contributes to 193, which says that there must be a realistic probability, not a theoretical probability. Where you've pointed to the absence of evidence, I show that most states would not criminalize this lack of any murderous intent or murderous mental state as murder, and there is only theoretical possibility that either one would. Thank you very much. Thank you. Thank you. Mr. Warren, I want to thank you both, Mr. Warren and Mr. Gleason, for your presentations today. This is a very interesting case. Mr. Warren, I want to thank you especially for taking this case pro bono on behalf of the court. It's greatly appreciated, and you've done an outstanding job. We'll be in recess in just a day, and we'll meet again. So, we are adjourned.
judges: Schroeder, Murguia, McCalla